1

2

3

4

5                          UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
6                                  AT SEATTLE

7     BRITNEE B.,

8                            Plaintiff,          CASE NO. C20-5480-MAT

9          v.
                                                 ORDER  RE: SOCIAL SECURITY
10    ANDREW M. SAUL,                            DISABILITY APPEAL
      Commissioner of Social Security,

11
                             Defendant.
12

13        Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

14   the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

15   application for Child Disability Benefits (CDB) and Supplemental Security Income (SSI) after a

16   hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the

17   administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

18                        **FACTS AND PROCEDURAL HISTORY**

19        Plaintiff was born on XXXX, 1993.[1]  She has a high school education and has no past

20   relevant work.  (AR 28.)

21        Plaintiff filed applications for CDB and SSI in April 2016, alleging disability beginning

22   June 10, 2012.  (AR 15.)   The applications were denied at the initial level and on reconsideration.

23
          ───────────────────
          [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

     ORDER
     PAGE - 1

1    On May 30, 2018, ALJ Lawrence Lee held a hearing, taking testimony from plaintiff and

2  a vocational expert. (AR 36-123.) On October 16, 2018, the ALJ issued a decision finding plaintiff

3  not disabled from the alleged onset date through the date of the decision. (AR 15-29.)

4    Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on

5  March 23, 2020 (AR 1-3), making the ALJ's decision the final decision of the Commissioner.

6  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

8    The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

10    The Commissioner follows a five-step sequential evaluation process for determining

11  whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

12  be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

13  engaged in substantial gainful activity since the alleged onset date. At step two, it must be

14  determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff had the

15  severe impairments of diabetes, Asperger syndrome, attention deficit disorder, learning disability,

16  depressive disorder, anxiety disorder, and mild bilateral sensorineural hearing loss. Step three asks

17  whether a claimant's impairments meet or equal a listed impairment. The ALJ found that

18  plaintiff's impairments did not meet or equal the criteria of a listed impairment.

19    If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

20  residual functional capacity (RFC) and determine at step four whether the claimant has

21  demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

22  simple, routine, repetitive, light-exertion work with additional postural and environmental

23  limitations and occasional interaction with coworkers or the public. She could hear and understand

ORDER
PAGE - 2

simple oral instructions, could not rely on noise-making devices for instructions, and could work in a moderate noise environment.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work as here, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a router or laundry aide.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by failing to inquire whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT), failing to consider a post hearing submission from another vocational expert, rejecting two medical opinions, rejecting lay witness statements, and finding plaintiff's hearing problem only moderately limiting.  She requests remand for further administrative proceedings.  The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

1

Medical Opinion Evidence

2      The ALJ is responsible for assessing the medical evidence and resolving any conflicts or

3 ambiguities in the record.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th

4 Cir. 2014); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  When

5 evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not

6 substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

7      In general, more weight should be given to the opinion of an examining doctor than to a

8 nonexamining doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where doctors' opinions

9 are contradicted, as in this case, they may only be rejected with "'specific and legitimate reasons'

10 supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoted source

11 omitted).  Even if an ALJ includes erroneous reasons to discount a doctor's opinion, the error is

12 harmless if the remaining reasons are valid.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir.

13 2012) (ALJ's error may be deemed harmless where it is "inconsequential to the ultimate

14 nondisability determination").

15 Examining Doctor Mary Lembert, M.D.

16      In June 2016 Dr. Lembert diagnosed autism spectrum disorder, persistent depressive

17 disorder, anxiety disorder, and history of learning disorders.  (AR 841.)  She opined plaintiff had

18 "great difficulty adapting to new environments and stressors," had "significant social and

19 communication difficulties," "cannot perform work activities on a consistent basis," and "would

20 have immense difficulty dealing with the usual stress encountered in a typical work environment."

21 (AR 842.)  The ALJ gave Dr. Lemberg's opinions "[l]ittle weight" because they were inconsistent

22 with "stable and mild" mental health findings and plaintiff's activities.  (AR 26.)[2]

23

---

[2] The ALJ noted Dr. Lemberg's opinions were based on a "one-time examination," which plaintiff
contends is an erroneous reason to discount medical opinions.  (AR 26.)  If the ALJ intended this as a reason

ORDER
PAGE - 4

1    Plaintiff's providers typically assessed her as "[d]oing well" on medication for anxiety with

2  depression.  (AR 872, 973, 1010, 1019.)  In February 2018 a provider assessed her anxiety and

3  depression as "[w]ell controlled and stable."  (AR 1041.)  Plaintiff also frequently reported doing

4  well.  (AR 1001, 1011, 1020.)  Thorough mental status examinations revealed entirely normal

5  results.  (AR 1015, 1020.)  The ALJ's finding that Dr. Lemberg's extreme limitations were

6  inconsistent with the medical evidence was supported by substantial evidence, and was a specific

7  and legitimate reason to discount her opinions.  *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir.

8  2020) (inconsistency with objective evidence in the medical record is a specific and legitimate

9  reason for rejecting the opinion of an examining doctor).

10    Inclusion of erroneous reasons was harmless.  *See Molina*, 674 F.3d at 1115.  The Court

11  concludes the ALJ did not err by discounting Dr. Lemberg's opinions.

12  Examining Doctor Alysa Ruddell, Ph.D.

13    In September 2014 Dr. Ruddell diagnosed major depressive disorder and opined plaintiff

14  had marked limitations in adapting to changes, communicating and performing effectively,

15  maintaining appropriate behavior, and completing a work day or work week.  (AR 667-68.)  The

16  ALJ gave Dr. Ruddell's opinions "[l]ittle weight" because they lacked explanation and were

17  inconsistent with plaintiff's activities.  (AR 27.)  In particular, plaintiff's "successful completion

18  of a Jobs Corps program" was inconsistent with marked limitations in maintaining appropriate

19  behavior and communicating and performing effectively.  (*Id.*)  Plaintiff argues that she had some

20  difficulty with the Jobs Corps program, including a suspension while she got her diabetes under

21  control, and that the training prepared her for a medium-exertion job inconsistent with her RFC.

22

23

to discount Dr. Lemberg's opinions, it was erroneous.  *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c) (ALJ must consider all medical opinions, including those of examining doctors).

ORDER
PAGE - 5

1  Nevertheless, she successfully completed the program, showing the mental ability to perform

2  work-like activity consistently and appropriately, adhering to behavioral codes as required. (*See*

3  AR 931 ("Performance Contract"), 460 (completion of program).)

4     Plaintiff's activities were a specific and legitimate reason to discount Dr. Ruddell's

5  opinions. Inclusion of erroneous reasons was harmless. The Court concludes the ALJ did not err

6  by discounting Dr. Ruddell's opinions.

7  State Agency Nonexamining Doctors Carla van Dam, Ph.D., and Lisa Hacker, M.D.

8     The ALJ gave Dr. van Dam's and Dr. Hacker's opinions "[s]ignificant weight" but

9  discounted social interaction and adaptation-related limitations. (AR 25.) Plaintiff contends the

10  ALJ erred by rejecting the limitation to occasional interaction with coworkers or the public.

11     The ALJ limited plaintiff to "occasional interaction with coworkers or the public." (AR

12  20.) Dr. van Dam and Dr. Hacker opined plaintiff would "likely do best in a work setting that is

13  away from the general public and with brief and superficial contact with her coworkers." (AR

14  138, 153, 170, 185.) The ALJ found such an extreme limitation unnecessary because plaintiff

15  regularly goes to church with 100 people, goes to the grocery store, takes buses, completed—and

16  made friends in—a Job Corps program, and volunteered at a preschool. (AR 25.) These were

17  sufficient reasons, supported by substantial evidence, to discount Dr. van Dam's and Dr. Hacker's

18  opined social limitations.

19     Plaintiff contends the ALJ erred by assuming "being in the presence of groups of people

20  involves interaction with them…." (Dkt. # 15 at 13.) First, the ALJ reasonably inferred that an

21  activity such as going to a grocery store required, at minimum, interacting with a cashier. *See*

22  *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's

23  findings are upheld if supported by inferences reasonably drawn from the record."). Second,

1  making friends necessarily requires interacting with people, at well beyond a superficial level.

2  This is substantial evidence supporting the ALJ's finding.  Plaintiff fails to show the ALJ erred.

3  　　　　Plaintiff's remaining arguments fail as well.  Plaintiff notes Dr. van Dam and Dr. Hacker

4  opined several "moderate" limitations that the ALJ "does not specifically account" for in the RFC,

5  but fails to make an explicit argument that the ALJ erred.  (Dkt. # 15 at 12.)  The moderate

6  limitations were further explained in narrative opinions, all of which the ALJ adopted except as

7  discussed above.

8  　　　　Plaintiff argues the State agency doctors failed to explain why they gave great weight to

9  Dr. Lemberg's opinions but opined less restrictive limitations themselves.  Plaintiff fails to explain

10  how this shows any error on the ALJ's part.  The ALJ was evaluating the doctors' own opinions,

11  not their appraisal of Dr. Lemberg's opinions.

12  　　　　The Court concludes the ALJ did not err by discounting portions of Dr. van Dam's and Dr.

13  Hacker's opinions.

14  <center>Lay Witness Statements</center>

15  　　　　The ALJ can reject the testimony of lay witnesses only upon giving germane reasons.

16  *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).  The ALJ gave "limited weight" to lay

17  witness statements by plaintiff's mother, former stepfather, and friend.  (AR 28.)

18  　　　　Plaintiff contends the ALJ erred by discounting the lay witnesses' observations of plaintiff

19  stumbling, falling, and having problems with balance.  The ALJ rejected reports plaintiff stumbled

20  frequently and lacked coordination because the medical evidence consistently showed normal gait,

21  balance, and coordination.  (AR 27.)  Plaintiff argues "[g]ait and other physical motions [that] are

22  only briefly observed in a doctor's office" are not indicative of function over an extended period

23  of time.  (Dkt. # 17 at 6.)  However, even though a doctor may not observe a patient stumble, the

ORDER
PAGE - 7

1   doctor's clinical findings are highly relevant to assessing the patient's likelihood of stumbling.

2   That plaintiff's doctors consistently observed normal gait, balance, and coordination contradicts

3   the lay witnesses' reports that plaintiff had abnormal balance and coordination, leading to

4   stumbling.  Contradiction with the medical evidence was a germane reason to discount the lay

5   witnesses' statements.  *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for

6   which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

7           To the extent plaintiff contends she is uncoordinated when her blood sugar is not under

8   good control, the ALJ rejected further limitations because of plaintiff's "non-compliance with

9   diabetes management."  (AR 28.)  Plaintiff argues this is "not willful non compliance but rather a

10  young person taking a long time" to accept that she was diagnosed with diabetes at age 8.  (Dkt. #

11  15 at 15.)   However, the ALJ found plaintiff "capable of being compliant with diabetes

12  management when she wants to be," such as when it was required in order to continue in the Job

13  Corps program.  (AR 23.)  The ALJ's finding was supported by substantial evidence.  Plaintiff's

14  ability to effectively control her diabetes is a germane reason to reject limitations attributed to it.

15  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that

16  can be "controlled effectively" by medication or treatment are not considered disabling for

17  purposes of determining eligibility for Social Security benefits).

18          The Court concludes the ALJ did not err by discounting the lay witnesses' statements.

19                                                Hearing

20          The ALJ gave "[s]ignificant weight" to the opinions of Sung Won Kim, M.D., who

21  examined plaintiff's hearing and concluded she had "a very mild sensorineural hearing loss" that

22  "likely contribut[ed] to minimal or no disability."  (AR 26, 846.)

23          Dr. Kim documented plaintiff's self-reports that "understanding speech is a problem" and

she has "problems in restaurants and other noisy places, in small group conversations, and in large groups." (AR 845.)  Plaintiff cites her own self-reports in arguing the ALJ erred by not finding her hearing loss more limiting.  But the ALJ permissibly concluded plaintiff's self-reports were not reliable, a conclusion plaintiff does not challenge.  Plaintiff cites the opinion of Gary Gaffield, D.O., that she could not "rely on … noise making devices or verbal commands…." (AR 835.)  The ALJ incorporated this opinion in the RFC, finding plaintiff "cannot rely on noise-making devices" and requires a "moderate noise environment." (AR 20.)  The ALJ's RFC findings need only be consistent with, not identical to, limitations assessed by a physician.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (ALJ properly incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).  Plaintiff fails to show the RFC was inconsistent with Dr. Gaffield's opinion.

Plaintiff contends the laundry aide job on which the ALJ relied at step five may not be "suitable for a person with hearing loss." (Dkt. # 15 at 14.)  Plaintiff points to hearing testimony about the laundry aide job.  When the vocational expert was asked, "if there's a bell or alarm goes off, and you're in a moderate noise environment, you have a hearing problem, so likely, you could not – you could miss it, correct?" he replied, "Yeah.  I mean, potentially, you could miss the alarm." (AR 109.)  Plaintiff fails to explain the import of this testimony.  It is not a vocational expert's role to testify as to the limitations caused by medical impairments, such as what a person with a particular hearing issue could hear.  And the vocational expert did not testify a person would be unable to maintain employment because of the possibility of missing an alarm on occasion.  In fact, he testified the "laundry [would] have visual cues as well, like a blinking light…." (AR 106.)  The ALJ did not err by finding the laundry aide job consistent with plaintiff's RFC.

Plaintiff fails to show the ALJ erred in evaluating her hearing problem.

ORDER
PAGE - 9

<div align="center">Vocational Evidence</div>

Conflict with the DOT

"[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  Plaintiff contends the ALJ erred by failing to ask vocational expert Lloyd Tommila if his hearing testimony was consistent with the DOT.  Plaintiff claims the error was harmful because "there is no explanation by the VE for the deviation from the DOT."  (Dkt. # 17 at 7.)  However, plaintiff identifies no deviation from the DOT.  Failure to ask about conflict would be "harmless, were there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts…." *Massachi v. Astrue*, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007).

The ALJ instructed Mr. Tommila, "if your testimony differs from the DOT, let us know how you arrived at your opinion and why it's different."  (AR 85.)  Mr. Tommila did so, noting for example that "[p]roduction pace" and degree of "contact … with people" were not addressed by the DOT.  (AR 87.)  He relied on his "vocational expertise" for information outside the DOT. (AR 119.)   The ALJ, "[p]ursuant to SSR 00-4p, … determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (AR 29.)  Plaintiff fails to identify any conflict between the DOT and Mr. Tommila's testimony that could have altered the outcome of the disability determination.

The Court concludes the ALJ did not harmfully err in addressing Mr. Tommila's testimony.

/ / /

/ / /

ORDER
PAGE - 10

1

Declaration by Plaintiff's Vocational Expert[3]

2

3

4

5

6

7

8

9

Plaintiff submitted a declaration from vocational rehabilitation counselor Joseph Moisan, Ed.D., to the ALJ after the hearing.  (*See* Dkt. # 15 at 16.)  The ALJ "decline[d] to admit this evidence because the requirements of 20 CFR 404.935(b) and 416.1435(b) are not met."  (AR 16.) Under these regulations an ALJ will accept untimely submissions if the claimant was misled or had limitations preventing timely submission, or if "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control" prevented timely submission.  20 C.F.R. §§ 404.935(b), 416.1435(b).  Plaintiff also submitted Dr. Moisan's declaration to the Appeals Council after the ALJ's decision.  (*See* AR 568-73.)

10

11

12

13

14

15

16

Plaintiff contends the ALJ erred by failing to consider Dr. Moisan's declaration, and the error is harmful because Dr. Moisan opined the router job was "a fast pace job," inconsistent with the RFC.  (AR 572.)  Dr. Moisan explained "[o]nly large enterprises have people working in this job and usually deal in large volumes.  That requires quick work and quick thinking to do the sorting and dispatch of mail and packages."  (AR 572-73.)  Dr. Moisan added, "See enclosed," but none of the material accompanying his declaration supports his opinion that the job of router requires quick work and quick thinking.  (AR 573.)

17

18

19

20

A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony" and no "additional foundation is needed."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Mr. Tommila testified about 10% of router jobs required a faster pace, which still left approximately 47,700 router jobs nationwide that were consistent with plaintiff's RFC.

21

22

23

[3] Plaintiff's request for a subpoena requiring the vocational expert to bring certain documents to the hearing was denied because plaintiff was permitted to cross-examine the vocational expert, which her counsel did, extensively.  (*See* AR 15, 89-119.)  To the extent plaintiff contends the ALJ erred by denying the subpoena request, plaintiff has not contended the error was harmful.

ORDER
PAGE - 11

1    (AR 92, 29.)  Dr. Moisan, at most, provides an alternative opinion regarding the router job.  He

2    does not demonstrate that the evidence offered by Mr. Tommila was not reliable or that no

3    "reasonable mind" could accept that the router job did not require a fast pace.  *Magallanes*, 881

4    F.2d at 750.

5              The Court concludes the ALJ did not err by relying on Mr. Tommila's testimony, and did

6    not harmfully err by failing to consider Dr. Moisan's report.

7                                             **<u>CONCLUSION</u>**

8              For the reasons set forth above, this matter is AFFIRMED.

9              DATED this <u>3rd</u> day of March, 2021.

10

11                                                          _____
                                                            Mary Alice Theiler
12                                                          United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

ORDER
PAGE - 12